# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| DBS CONSTRUCTION INC. and<br>WILLIAM SZARMACH d/b/a<br>CHASE STREET AUTO WRECKING, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) 2:10-cv-225 |
| NEW EQUIPMENT LEASING, INC.<br>and JOHN DOE COMPANY (whose true and<br>accurate name is unknown), | )<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

It's not often I get to delve into the question of who is the rightful owner of a wheel loader. But that is the question I am asked to answer in this case. New Equipment took the loader at-issue, believing that it was collateral securing some lease agreements it had with a construction company named Brandon Excavating. But the Plaintiff in this case, DBS Construction, claims that it, and not Brandon Excavating, is the rightful owner of the loader. When New Equipment refused to return the loader, DBS filed this suit for replevin, conversion, and tortious interference. My Order of September 10, 2010 [DE 43] already preliminarily addressed the replevin count. In that Order, I found that New Equipment had unlawfully seized the loader and made a preliminary determination that DBS and its owner William Szarmach were entitled to possession, so long as proof of a surety bond was filed with the Court in the amount of $115,000.00 (a bond which has yet to be filed some six months later). New Equipment now moves for partial summary judgment on the claims for conversion and tortious interference. [DE 73.] For the reasons explained below, the Motion will be granted.

**BACKGROUND**

Only a brief recitation of the facts is necessary here, as much of the background underpinning this case was already spelled out in the September 10, 2010 Order. Plaintiff William Szarmach owned Chase Street Auto Wrecking, a salvage company that is no longer in business, and currently owns the other plaintiff, DBS Construction, Inc. He purchased the loader at issue in 2001 and had it paid off in full by 2008. Szarmach used the loader for his business, and permitted his sons, who are in the construction business, to occasionally use the loader as well. One of his sons would sometimes use the loader at his business, Brandon Excavating, and even went so far as to place four "Brandon Excavating" decals on the loader. The son says he did this to avoid problems with unions at his work sites.

Those decals helped to trigger the course of events at issue in this case. Brandon Excavating had previously entered into multiple lease agreements with New Equipment whereby Brandon Excavating leased construction equipment from New Equipment and New Equipment took a blanket security interest in all of Brandon Excavating's assets. Brandon Excavating subsequently defaulted on these leases, and New Equipment sought to enforce the blanket security interest, which included searching for the collateral in order to exercise its self-help remedy of repossession under Section 609 of the UCC. *See* Ind. Code. § 26-1-9.1-609 ("(a) After default, a secured party: (1) may take possession of the collateral . . . (b) A secured party may proceed under subsection (a): . . . (2) without judicial process, if it proceeds without breach of the peace.").

New Equipment found some of that collateral – or, at least, *believed* it found some of that collateral – on April 21, 2010, when a former Brandon Excavating employee told New

Equipment's president Raymond Lanning that some of Brandon Excavating's equipment was at a site in Hobart, Indiana. Lanning did not know who owned the site in Hobart, but when he and his canary arrived there they found one of the dump trucks that New Equipment had leased to Brandon Excavating. They also found the loader, which had the four weathered "Brandon Excavating" decals. The former employee told Lanning that the loader belonged to Brandon Excavating. Based on this information, the decals, and its UCC rights to take possession of the collateral, Lanning took possession of the dump truck and the loader on April 22, 2010.

But appearances can be deceiving, and if you don't do your homework, acting on appearances alone can land you in court. That's what happened to New Equipment Leasing because it is unlikely that Brandon Excavating actually owns the loader. As I found in my September 10, 2010 opinion, "Szarmach made a sufficient prima facie showing that he both owns the loader and has a right to possess it," and New Equipment did not provide sufficient evidence to rebut this showing. [DE 43 at 5.] So while New Equipment may have had good reason to think that the loader belonged to Brandon Excavating, that was a mistake, albeit one that appears to have been completely reasonable.

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If no reasonable jury could find for the nonmoving party, there is not a genuine issue of material fact. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). On summary judgment, facts and inferences are construed in favor of the non-moving party. *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). However, in order to benefit from this

view of the facts, the non-moving party must provide evidence to support any essential element that it has the burden of proving at trial, and conclusory allegations are not sufficient. *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010)

New Equipment has only moved for summary judgment on two of Plaintiffs' three claims, conversion and tortious interference. I will consider each in turn.

### A. Conversion

In Indiana, individuals who have been damaged by criminal conversion may make a claim for civil conversion. Ind. Code § 34-24-3-1. "The elements necessary to establish a civil cause of action for conversion are found in the criminal conversion statute, although a plaintiff in a civil conversion action is required to prove those elements only by a preponderance of the evidence." *McKeighen v. Daviess Cnty. Fair Bd.*, 918 N.E.2d 717, 723 (Ind. Ct. App. 2009). Criminal conversion occurs when someone "knowingly or intentionally exerts unauthorized control over property of another." Ind. Code § 35-43-4-3(a). To demonstrate the existence of intent for criminal conversion – i.e., to prove that the unauthorized control over property was exerted "knowingly or intentionally" – "the plaintiff must show that the defendant was aware that there was a high probability that its control over the property was unauthorized." *Dean V. Kruse Foundation, Inc. v. Gates*, 932 N.E.2d 763, 769 (Ind. Ct. App. 2010).

Construing all the facts and inferences in Plaintiffs' favor, there is no evidence that New Equipment was "aware that there was a high probability that its control over" the loader was "unauthorized." On the contrary, all the evidence – including the information from the former Brandon Excavating employee and the decals – indicates that New Equipment truly believed that it *was authorized* to take "control over" the loader.

4

Indiana caselaw on conversion underscores this conclusion. First, as is the case here, the intent element of conversion is generally not met when a third party tells a defendant information that leads the defendant to reasonably believe they have the right to control property. That's what happened in *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 598 (Ind. Ct. App. 2008), in which the defendant was told by the Indiana Department of Financial Institutions that it was entitled to keep the plaintiff's money. Because of this statement, the defendant reasonably believed it was entitled to keep the money and thus was not aware that there was a "high probability" that its control over the money was unauthorized. *Id.* Likewise, in *Computers Unlimited, Inc. v. Midwest Data Sys., Inc.*, 657 N.E.2d 165, 171 (Ind. Ct. App. 1995), the court granted the defendant's motion for summary judgment on the grounds that the plaintiff could not prove intent because a third party had told the defendant that it owned the property in question. The court noted that this negated the intent element because the defendant was not aware of a "high probability" that it was exercising unauthorized control over the plaintiff's property. *Id.*

The same is true here. New Equipment believed, based on the information it received from the former Brandon Excavating employee, that it had a right to possess the loader pursuant to its security interest. The "Brandon Excavating" decals on the loader were the clincher and only further confirmed that belief. Nothing in the facts as they were known to New Equipment when it took possession of the loader indicated that there was a "high probability" that control of the loader would be unauthorized. Actually the opposite is true: the facts as New Equipment reasonably understood them indicated that there was a high probability that it was authorized to take control of the loader.

Moreover, New Equipment's refusal to return the loader to Plaintiffs also leads to an

5

inference that New Equipment believed it was authorized to take the Loader. The holding in *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1115 (S.D. Ind. 2001), in which the defendant possessed a car believing that he was entitled to it as a fringe benefit from his employer after termination, supports that inference. In that case, when the plaintiff demanded that the defendant return the car, the defendant refused because he believed that he had a right to possess it. *Id.* at 1116. The court determined that the refusal demonstrated defendant's reasonable belief that he was authorized to possess the car, "thereby defeating the *mens rea* requirement of conversion." *Id.* at 1117. Just as in *Manzon*, New Equipment's refusal to return the Loader when it was demanded by Plaintiffs prior to filing this suit shows that New Equipment believed that Brandon Excavating owned the loader and, as such, New Equipment was entitled to possession of it.

Plaintiffs have not pointed to any contrary facts on the issue of New Equipment's intent. That is, there is nothing before me that would indicate that New Equipment believed there was a "high probability" that its control over the loader was unauthorized at the time it took possession of the item. And New Equipment was still unsure even after reviewing the documents that purported to show that DBS and Szarmach owned the loader. Indeed, I found it very difficult to definitively determine ownership at the replevin hearing based on the documentary evidence – as I stated in the September 10 Order, "there is no document that conclusively shows who owns the loader." [DE 43 at 4.]

In sum, there is no indication that New Equipment acted with a conscious objective to exert unauthorized control over the loader or that it was aware of a high probability that it was doing such a thing. So Plaintiffs cannot prove the intent element of conversion, and as such New Equipment is entitled to summary judgment on this claim.

**B. Tortious Interference with Contract**

New Equipment also requests summary judgment on Plaintiffs' count for tortious interference with contract. This claim is based on the fact that DBS Construction had a loading contract with a company called Froman Mining and Excavation that it was unable to perform as a result of New Equipment's possession of the loader. [DE 79-2 at 2.]

In order to prove tortious interference with a contract, Plaintiffs must prove:

> (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach.

*Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000). A defendant must have acted intentionally or knowingly for this tort, and mere negligence will not suffice. *Tenta v. Guraly*, 221 N.E.2d 577, 580 (Ind. Ct. App. 1966).

New Equipment first argues that it can't be liable for tortious interference because it knew nothing about the contract between DBS Construction and Froman. This is undoubtedly correct. In order to prove the knowledge element of tortious interference, Plaintiffs must prove that New Equipment had knowledge of the contract at the time of the allegedly tortious conduct. *Tenta*, 221 N.E.2d at 580. Importantly, this must be *actual* knowledge – objective standards like implied knowledge or constructive knowledge are insufficient. *Id. See also Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.* 759 N.E.2d 239, 251-252 (Ind. Ct. App. 2001) (summary judgment granted to Defendant for tortious interference with contract in part because Defendant had no knowledge of the contract at issue).

New Equipment did not have actual knowledge of the contract between DBS Construction and Froman at any time before the contract was breached. In fact, the first time that New Equipment had any knowledge of either DBS Construction or Froman – much less of any contract between the two – was only after it had been served with the Complaint in this case. [DE 74-2 at 4.] Plaintiffs repeatedly argue that New Equipment "knew or should have known" about the Froman contract. [DE 79-2 at 8.] But they provide no evidence whatsoever that New Equipment "knew" of the contract, and whether or not New Equipment "should have known" about the contract is entirely beside the point because, as noted, tortious interference requires *actual* knowledge.

Summary judgment on the tortious interference claim is appropriate for yet another reason: Plaintiffs cannot prove that New Equipment acted with an "the absence of justification." New Equipment's actions were justified if they were motivated by "legitimate business purpose" rather than malice or a "disinterested malevolence." *Bilimoria Computer Systems, LLC v. America Online, Inc.*, 829 N.E.2d 150, 157 (Ind. Ct. App. 2005). New Equipment's possession of the loader was not motivated by malice; rather, it was clearly fueled by a legitimate business purpose. New Equipment is a leasing company. Its business relies on collecting lease payments and, when these payments fail, foreclosing on the collateral. Concern for managing debtors and security interests is a legitimate business concern. *Flintridge Station Assocs. v. American Fletcher Mortg. Co.*, 761 F.2d 434, 442 (7th Cir. 1985). Thus, New Equipment's attempt to exercise its secured lender self-help rights by taking possession of the loader did not occur in the "absence of justification." Of course, it remains to be seen whether this possession was ultimately *rightful* – my preliminary conclusion in the September 10 Order that Szarmach "owns

the loader and has a right to possess it" indicates it was not. But rightful or not, it is entirely clear that New Equipment believed its actions were *justified*, and that is sufficient to preclude Plaintiff's tortious interference claim.

To summarize: Plaintiffs cannot prove that New Equipment knew of the contract between DBS Construction and Froman, nor can they prove an absence of justification for New Equipment's actions. So New Equipment is entitled to summary judgment on Plaintiffs' tortious interference claim as well.

## CONCLUSION

Even construing all factual allegations in their favor, Plaintiffs have failed to demonstrate that New Equipment had the intent required for conversion. Likewise, Plaintiffs have also failed to demonstrate that New Equipment knew about the contract between DBS and Froman or that New Equipment acted without justification, and thus they have no claim for tortious interference with contract. This may seem inequitable at first glance – How can one party take the property of another without some recourse for damages? – but that reaction would ignore Plaintiff's still-viable replevin count and the fact that "damages for wrongful detention or loss of use may still be recovered in a replevin action, if the taking or the detention of the property is shown to be wrongful." *Romanowski v. Giordano Mgmt. Group, LLC*, 896 N.E.2d 558, 562 (Ind. Ct. App. 2008).

Therefore, New Equipment is entitled to judgment as a matter of law on both the conversion claim and the tortious interference with contract claim. New Equipment's Partial Motion for Summary Judgment [DE 73] is **GRANTED.**

**SO ORDERED.**

Entered: March 28, 2011.

                                               s/ Philip P. Simon
                                              PHILIP P. SIMON, CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT